IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MONTEZ CAPLES,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES MARMOR and KEN PIRC,<br><br>Defendants. | No. 4:18-cv-00214-RGE-CFB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

With the assistance of counsel, Plaintiff Montez Caples brings this amended complaint under 42 U.S.C. § 1983. Am. Compl., ECF No. 23. Defendants move for summary judgment. Defs.' Mot. Summ. J., ECF No. 29. Caples resists the motion. Pl.'s Resist. Defs.' Mot. Summ. J., ECF No. 38. Defendants have filed a reply. Defs.' Reply Supp. Mot. Summ. J., ECF No. 39. Because qualified immunity applies, the Court finds Defendants are entitled to summary judgment.

I.  BACKGROUND

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (same).

At all relevant times, Caples was incarcerated at the Iowa State Penitentiary, Defendant Charles Marmor was the Chaplain at the penitentiary, and Defendant Ken Pirc was the Statewide Religious Coordinator for the Iowa Department of Corrections. ECF No. 23 at 2.

At all relevant times, the Iowa Department of Corrections had a Religious Programming Policy which defined a "Religious Food Event" as "[a] doctrinally required gathering of a particular group where food is utilized as a part of a rite, ceremony, or fulfilment of a religious obligation." Defs.' App. Supp. Mot. Summ. J. at APP. 2, ECF No. 29-3. A religious food event

allows inmates "to order food into the prison from an outside vendor." *Id.* at APP. 26. The policy states inmates must "be in the appropriate [Transition Incentive Program (TIP)] level . . . to participate in food events." *Id.* at APP. 11. Relying on this policy, prison officials limit participation in religious food events to those inmates in general population. *Id.* at APP. 27. Inmates in restricted, segregated, disciplinary, investigative, or protective status are not allowed to participate in food events. *Id.* Food from outside vendors is considered contraband in restricted housing units. *Id.*

Caples is a member of the Hebrew Israelite religious group. Pl.'s App. Supp. Resist. Defs.' Mot. Summ. J. 1, Caples Aff. ¶ 3, ECF No. 38-3. As part of his faith, Caples participates in and observes religious holidays, some of which are observed by fasting for nine days and nine nights and feasting on the last day. *Id.* ¶¶ 3–4. Caples states he was denied religious meals on March 31, 2018 and in September 2018. *Id.* ¶¶ 4, 6. At the time of both religious holidays, Caples was "in the hole." *Id.* ¶¶ 7, 16; *see also* Defs.' Suppl. App. Supp. Mot. Summ. J at SUPPL. APP. 1, ECF No. 39-2 (showing Caples was in administrative segregation beginning March 22, 2018). Marmor said Caples was not allowed religious food trays while he was in a restricted security level status. Caples Aff. ¶ 13, ECF No. 38-3 at 2. Caples avers he and other inmates "have been able to receive [their] kosher meals, even while in the hole. This occurred until Defendant Marmor became ISP's Chaplain." *Id.* ¶ 18.

The Religious Programming Policy also provides a system for grieving religious issues within the prison system. ECF No. 29-3 at APP. 2. Under this policy, an inmate with a religious issue must initiate the process within fourteen days of the alleged incident by attempting to resolve the problem informally. *Id.* at APP. 6. If not satisfied, the inmate may file a formal grievance with the Chaplain or designee within 30 days of the alleged incident. *Id.* Within seven days of receiving the inmate's grievance, the Chaplain shall complete an evaluation form and forward it with the

original grievance to the Statewide Religious Activities Coordinator. *Id.* The Statewide Religious Activities Coordinator shall provide a written response and recommendation within 21 working days of receiving the Chaplain's form. *Id.* The inmate may appeal an adverse decision to the Statewide Religious Activities Review Committee within 21 days of the date of the Statewide Religious Activities Coordinator's response. *Id.* The Statewide Religious Activities Review Committee, which meets quarterly, reviews appeals. *Id.* Its decision is the final agency action. *Id.* at APP. 7.

On April 26, 2018, Caples sent a memo to Marmor marked "Informal Resolution," stating he did not receive his meals from the March 31, 2018 Hebrew Israelite holiday. *Id.* at APP. 12. Marmor responded that the informal resolution was more than fourteen days after the event, and any outside food order was denied because he was in a status level that did not allow outside meals. *Id.*

Caples sent a second informal resolution memo to Marmor on April 29, 2018, asking to make sure his name was on the list for future holy day celebrations. ECF No. 38-3 at 8. On May 1, 2018, Caples asked the unit manager for a receipt of his April 26, 2018 memo. *Id.* The unit manager responded that she did know what he meant by document receipt. *Id.*

Caples renewed his request for copies of his informal resolutions on May 2, 2018, specifically requesting his "informal resolution document receipt." *Id.* at 9. Prison staff responded that his memoranda were returned to Caples, and a second response was that the prison official had "no idea" what Caples meant by an "informal resolution document receipt." *Id.*; *see also id.* at 10 (making same request on May 3, 2018 and receiving similar response).

On May 8, 2018, Caples formally submitted Religious Grievance #229, alleging he was denied his kosher meals in March 2018. ECF No. 29-3 at APP. 13. The grievance was marked "received" June 18, 2018. *Id.* Chaplain Marmor noted Caples waited more than fourteen days to

3

bring an informal resolution. *Id.* at APP. 14. He also stated Caples "was in a TIP level that did not allow him to order from an outside vendor." *Id.* Caples appealed, and Pirc denied the grievance because the informal grievance was untimely. *Id.* at APP. 15 ("[Y]ou have 14 days from the time of an incident to attempt an informal resolution with your institutional chaplain or designee. In this situation, you waited 27 days to contact your chaplain.").

Caples avers he appealed this denial but never received a response to his appeal. Caples Aff. ¶ 14, ECF No. 38-3 at 2. Caples acknowledges the informal grievance was presented more than fourteen days after the event, and but avers he did not realize what date it was until someone asked if Caples received the meals. *Id.* ¶ 8.

On September 3, 2018, Caples sent a memo marked "informal resolution" to Marmor to be sure his name was on the list for observing Sukkot and to receive a kosher meal. ECF No. 29-3 at APP. 16. Marmor responded that Caples could not receive outside food giving his current housing level. *Id.* On October 2, 2018, Caples filed formal Religious Grievance #254 regarding the denial of his September 2018 Sukkot meal. *Id.* at APP. 17–18. Marmor responded that, among other things, Caples was not allowed outside food due to his current housing status level. *Id.* at APP. 19. Pirc denied the grievance because Caples was "not in a general population status during this holy day. Thus, you will not celebrate with outside food. That is a privilege of general population." *Id.* at APP. 21. Caples appealed Pirc's decision to the Statewide Religious Activities Review Committee. *Id.* at APP. 22. The Committee denied his appeal, stating, per policy, "participants for food events/feasts must be in an appropriate TIP/TIER level. You were not." *Id.* at APP. 24.

## II.  LEGAL STANDARD

The Court will grant summary judgment if, viewing the evidence in the light most favorable to the nonmoving party, "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkison v. City of Mt. View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cty.*, 621 F.3d 740, 743 (8th Cir. 2010)).

To avoid an entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To show a fact is genuinely disputed, a party must support the assertion by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The quantum of proof the nonmoving party must produce is not precisely measurable, but it must be enough evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007) ("[T]he nonmoving party must present more than a scintilla of evidence

and must advance specific facts to create a genuine issue of material fact for trial.") (quoting *FDIC v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997)) (quotation marks omitted).

## III. DISCUSSION

Caples alleges Defendants violated his First Amendment rights by refusing to provide religious meals to him in March and September of 2018. ECF No. 23 at 2–3. Defendants argue they are entitled to summary judgment because (1) Caples failed to exhaust administrative remedies with respect to the March 2018 incident; (2) Defendants have qualified immunity; and (3) Defendants did not violate Caples's First Amendment rights. Defs.' Mem. Supp. Mot. Summ. J. 2, ECF No. 29-1.

### A. Exhaustion

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Jones v. Bock*, 549 U.S. 199, 211 (2007). The burden is on defendants to raise and prove this affirmative defense. *See id.* at 212 (agreeing with majority of courts that exhaustion in prisoner case is affirmative defense).

Defendants argue Caples failed to exhaust his administrative remedies with respect to the incident in March 2018. ECF No. 29-1 at 8. Caples acknowledges he is required to exhaust administrative remedies but alleges those remedies were unavailable to him. Pl.'s Br. Supp. Resist Defs.' Mot. Summ. J. 5, ECF No. 38-2. A prisoner is only required to exhaust available remedies, that is, remedies "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858–59 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Caples contends he repeatedly requested document receipts of his informal resolution but was "mocked by Defendants and ISP staff"

6

who stated they did not know what Caples meant by a "document receipt." ECF No. 38-2 at 5. Caples argues he was "asking for something to show that he was doing what he was supposed to be doing to administratively exhaust his remedies." *Id.*

The response from prison officials to his requests for a receipt was less than generous. However, Caples was only requesting a receipt for his informal grievance. His requests for a receipt, although rebuffed, do not explain why he waited more than fourteen days to attempt informal resolution. Caples avers he did not know what day it was until someone asked if he had received his meals. Caples Aff. ¶ 8, ECF No. 38-3 at 2. He does not allege, however, that prison officials prevented him from initiating the grievance procedure. *See Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015) (reiterating administrative remedies are not available if prison officials have prevented prisoners from using procedures).

Regardless of whether his request for informal resolution was untimely, the relevant question is whether Caples exhausted his administrative remedies by appealing Pirc's decision to the Statewide Religious Activities Review Committee. ECF No. 29-3 at APP. 15 (advising Caples of his right to appeal). According to Pirc, who has reviewed the prison records, "Caples did not submit a final-level appeal for religious grievance number 229." Pirc Aff. ¶ 16, ECF No. 29-3 at 27.

Caples avers he did appeal the denial of his formal grievance but never received a response. Caples Aff. ¶ 14, ECF No. 38-3 at 2. He argues there is no record of him doing so because Defendants routinely lose or misplace grievances. ECF No. 38-2 at 5. In support of this statement, Caples provides copies of internal memoranda he sent to prison staff unrelated to this incident. ECF No. 38-3 at 5–7. In one response to a request for action, Marmor wrote "[t]he Statewide Religious Coordinator has found your grievance and you'll be getting a response this week." *Id.* at 5. Another memo asking about a grievance submitted "6–7 months ago" shows staff

recorded the grievance but Caples received no formal response. *Id.* at 7. The Court does not find these examples of misplaced grievances support a finding that prison officials routinely lose or misplace prisoner grievances.

Nonetheless, the record does contain competing affidavits as to whether Caples appealed Pirc's decision. The burden is on Defendants to prove a lack of exhaustion. *See Jones*, 549 U.S. at 212. Although he could have included more information about how or when he filed the appeal, Caples's affidavit in this situation is sufficient to create a genuine issue of material fact that he appealed Pirc's decision to the Statewide Religious Activities Review Committee. The Court finds Defendants have not demonstrated Caples failed to exhaust his administrative remedies with respect to this grievance.

### B.     Qualified Immunity

"Qualified immunity shields public officials from liability for civil damages if their conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). That is, qualified immunity should not be granted if a "reasonable official" would have known the conduct violates a constitutional right. *Boudoin v. Harsson*, 962 F.3d 1034, 1039 (8th Cir. 2020). To rebut a qualified immunity defense, a plaintiff must show the official violated a constitutional right, and that the right was "clearly established" at the time of the constitutional violation. *Dillard*, 961 F.3d at 1052. It is not necessary to have a case directly on point to be "clearly established" law, but there must be legal precedent placing the "'constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Prison officials previously defended the prohibition of special religious food trays to prisoners in the lock-up unit "in order to keep contraband out of the unit." *Goff v. Graves*,

362 F.3d 543, 549 (8th Cir. 2004). The Court of Appeals in *Goff* concluded "the ban on delivering food trays from the 'celebration of life' banquet to [inmates] in lock-up is reasonably related to legitimate penological interests, and thus, there is no impermissible infringement on the free-exercise rights of any [inmate]." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Caples avers he has "always been able to receive [his] kosher meals so that [he] may observe [his] religion's holidays even while in this status." Caples Aff. ¶ 9, ECF No. 38-3 at 2. He argues, "[w]hile there might be a penological interest in denying food trays, as evidenced in *Goff*, Defendants cannot pick and choose when they will follow policy and when they will not." ECF No. 38-2 at 7–8.

Defendants do not respond to Caples's statement that he received religious food event meals prior to 2018 when he in segregated status. Nonetheless, even if Caples could demonstrate inconsistent application of the policy negated the prison's legitimate governmental interest, he must show his right to receive food was clearly established in order to survive a qualified immunity challenge.

*Goff* held the prison's ban on "trays of food to [inmates] in lock-up does not violate any prisoner's free-exercise rights." *Goff*, 362 F.3d at 548–49. In light of this conclusion, no clearly established law guaranteed religious food event meals to inmates in segregated status. Rather, the clearly established law in *Goff* holds no constitutional violation occurs where a prison policy denies food event meals to prisoners in disciplinary status. *Id.* at 550. A reasonable officer would have relied on *Goff* to deny religious food event meals to inmates in segregated custody. Thus, even if Caples could show the inconsistent application of the religious food event policy defeated a legitimate security concern, Defendants would be entitled to qualified immunity. Summary judgment in favor of Defendants is appropriate.

### C. First Amendment Claim

Because the Court finds Defendants are entitled to qualified immunity, it need not reach the merits of Defendants' assertion Caples's First Amendment claim fails based on the ruling in *Goff*.

## IV. CONCLUSION

For the forgoing reasons, the Court grants Defendants' motion for summary judgment.

**IT IS ORDERED** that Defendants Charles Marmor and Ken Pirc's Motion for Summary Judgment, ECF No. 29, is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 21st day of September, 2020.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE